UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

<u>Joseph Griffiths</u>

            v.                          Civil No. 08-cv-507-JL
                                        Opinion No. 2010 DNH 069
<u>Certain Underwriters at</u>
<u>Lloyds, London and Croton</u>
<u>Stokes Wilson Limited</u>

## **O R D E R**

This case presents the not-uncommon scenario of an insurer's denying coverage for a covered loss based on alleged misrepresentation in the insured's application for the policy. Joseph Griffiths, proceeding pro se, has sued certain underwriters at Lloyds, London, and Croton Stokes Wilson Limited, alleging that they breached the homeowners insurance policy they issued him. Lloyds refused to make payment for a fire loss that Griffiths suffered at the insured premises, a two-family home he owns in Groveton, New Hampshire, claiming he had engaged in "concealment or fraud" as prohibited by the policy.[1] Lloyds

---

[1] The policy was issued by Lloyds, not by Croton Stokes Wilson Limited, whom Lloyds has identified as its broker. Thus, Griffiths has no claim against Croton Stokes Wilson Limited for breaching the policy but, even if he did, that claim would meet the same fate as his claim against Lloyds for breaching the policy. And insofar as Griffiths suggests a claim other than breach of contract against either defendant, that claim has been waived because it was not identified by Judge Muirhead in his report and recommendation construing the complaint, to which Griffiths did not object. <u>See</u> <u>Santiago v. Canon U.S.A., Inc.</u>, 138 F.3d 1, 4 (1st Cir. 1998).

asserts that, when Griffiths applied for the policy, he made a
number of false statements--including that he had not been
indicted for the crime of fraud in the past five years, when in
fact he was under indictment at that time for forging signatures
on the deeds to various other properties.

This court has jurisdiction over this action between
Griffiths, a citizen of Maine, and Lloyds and Croton Stokes
Wilson, both English subjects, under 28 U.S.C. § 1332(a)(2)
(diversity).  The defendants have moved for summary judgment,
arguing that there is no factual dispute that Griffiths
intentionally made that and other materially false statements in
the application.  After oral argument, the court grants the
motion.  As explained <u>infra</u>, the record conclusively establishes
that:  Griffiths was under indictment for "the crime of fraud,"
as that term appeared in the application, at the time he signed
it; he acted with the intent to deceive in stating to the
contrary; and that statement was material because Lloyds would
not have issued the policy had it known about the indictments.


## I.   **Applicable legal standards**

## A.   **The summary judgment rule**

Summary judgment is appropriate where the "pleadings, the
discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  Under this rule, a genuine issue of fact exists only if a reasonable finder of fact could resolve it in favor of either side.[2]  <u>See</u>, <u>e.g.</u>, <u>Lockridge v. Univ. of Me. Sys.</u>, ___ F.3d ___, 2010 WL 797149, at *3 n.3 (1st Cir. Mar. 10, 2010).  In deciding a motion for summary judgment, the "court must scrutinize the record in the light most flattering to the party opposing the motion, indulging all reasonable inferences in that party's favor."  <u>Mulvihill v. Top-Flite Golf Co.</u>, 335 F.3d 15, 19 (1st Cir. 2003).

A party raising fraud as a defense to contract claim--like the defendants here--bears the burden of proving the fraud.  <u>See Van Der Stok v. Van Voorhees</u>, 151 N.H. 679, 681-82 (2005); 6 <u>Couch on Insurance</u> § 82:5 (Lee R. Russ <u>et al.</u>, eds., 3d ed. 1997) (observing that the insurer has the burden of proving the

---

[2]As the Supreme Court has explained, Rule 56 therefore "authorizes summary judgment only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, and where no genuine issue remains for trial for the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." <u>Poller v. Columbia Broad. Sys., Inc.</u>, 368 U.S. 464, 467 (1962) (quotation marks, ellipses, and bracketing omitted).  In other words, when there are no factual issues in genuine dispute, there is nothing for the jury to decide and the court must simply enter judgment for one side or the other as a matter of law.

insured's misrepresentation as a defense to coverage).  Where "the party moving for summary judgment bears the burden of proof on an issue, he cannot prevail unless the evidence that he provides on that issue is conclusive."  <u>EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de P.R.</u>, 279 F.3d 49, 55 (1st Cir. 2002) (internal quotation marks omitted).  Under New Hampshire law, fraud must be established by clear and convincing evidence.  <u>See Brochu v. Ortho Pharm. Corp.</u>, 642 F.2d 652, 662 (1st Cir. 1981); <u>Hair Excitement, Inc. v. L'Oreal U.S.A., Inc.</u>, 158 N.H. 363, 369 (2009).

**B.   The summary judgment record**

Under Rule 56(c), "the discovery and disclosure materials on file" include any transcripts of the depositions taken in the action and properly submitted by the parties.  <u>See</u>, <u>e.g.</u>, <u>Prescott v. Higgins</u>, 538 F.3d 32, 40 (1st Cir. 2008).  But Griffiths objects to the use of the excerpts from his deposition transcript submitted with the motion for summary judgment here because he "never was given the opportunity to review" them until they were served upon him with the motion itself and they contain "several inaccuracies."  He adds that he did not see a full copy

4

of his deposition transcript until after the motion had been fully briefed, when he received one from the reporting service.[3]

"On request by the deponent or any party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which (A) to review the transcript or recording; and (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." Fed. R. Civ. P. 30(e)(1). As this rule indicates, a timely request to review the transcript serves as "an absolute prerequisite to amending or correcting a deposition." Rios v. Bigler, 67 F.3d 1543, 1552 (10th Cir. 1995); see also Fed. R. Civ. P. 30(e) advisory committee's note (1993).

The defendants maintain that, while they do not doubt that Griffiths has only just recently received a copy of his

---

[3]Griffiths also suggests that he did not receive adequate notice of his deposition beforehand. But he waived any deficiency in the notice by attending his deposition without objection. See Fed. R. Civ. P. 32(d)(1); Brown Badgett, Inc. v. Jennings, 842 F.2d 899, 902 (6th Cir. 1988). And Griffiths complains that he was "heavily medicated" during his deposition, but, when asked about that at the deposition itself, said, "I am on medication, but I think that I can answer the questions," which he proceeded to do at length and without any apparent difficulty. Nor has Griffiths identified any particular answers from the deposition that were mistaken or confused due to his medicated state. So the deposition transcript cannot be suppressed on that basis. See Herzog v. Delta Air Lines, Inc., No. 91-0083, 1992 WL 142581, at *1 (E.D. La. June 10, 1992).

deposition transcript,[4] he failed to request one during the deposition itself, thus waiving his right to review and revise it under Rule 30(e)(1).  But the copy of the deposition on file with the court states, among other stipulations, "It is further agreed that if the deposition is not signed within thirty (30) days after submission to counsel, the signature of the deponent is waived."  This stipulation assumes that the transcript would in fact be submitted to Griffiths (who was proceeding without counsel), who would then have 30 days to review and sign it.  The stipulation, then, is tantamount to a request that Griffiths receive a copy of the transcript under the rule:  it is hard to understand why Griffiths, or any deponent, would agree to take only 30 days to review a transcript that he was not even going to receive in the first place.  Cf. Agrizap, Inc. v. Woodstream Corp., 232 F.R.D. 491, 493-94 (E.D. Pa. 2006) (suggesting that a

_____

[4]The record does not suggest that this omission was intentional and, indeed, leaves open the possibility that the reporter did previously contact Griffiths to tell him that his deposition transcript was available in accordance with Rule 30(e)(1).  But because the excerpts of the transcript filed by the defendants do not contain the certification required by Rule 30(e)(2)--which requires the reporter to note "whether a review was requested and, if so, [to] attach any changes the deponent makes during the 30-day period"--the court must take Griffiths at his word that he did not know of the transcript until the summary judgment motion was filed.

stipulation that "the witness will read and sign" amounts to a request to review the transcript under Rule 30(e)(1)).

Accordingly, the materials before the court indicate that Griffiths properly requested a copy of his deposition transcript to review and sign, but did not receive one until after the motion for summary judgment had been fully briefed.  While "[a]n objection to how the officer transcribed the testimony . . . is waived unless a motion to suppress is made promptly after the error or irregularity becomes known or, with reasonable diligence, could have been known," Fed. R. Civ. P. 32(d)(4), Griffiths objected to the use of his deposition as inaccurately transcribed within 30 days of having seen any part of it for the first time, and immediately upon having seen it in its entirety for the first time.[5]  These objections were prompt in light of when the claimed inaccuracies in the transcript became known to

_____

[5]Though Griffiths did not make any filing styled as a motion to suppress, he did specifically object to the use of the transcript based on his lack of a prior opportunity to review it in both his objection to the summary judgment motion and a subsequent "motion to compel."  Under the circumstances, these filings were sufficient to invoke Rule 32(d)(4).  See Dutil v. Murphy, 550 F.3d 154, 158 (1st Cir. 2008) (noting the practice to "hold pro se pleadings to less demanding standards than those drafted by lawyers"), cert. denied, 129 S. Ct. 2064 (2009); cf. Perez v. Volvo Car Corp., 247 F.3d 303, 314-15 (1st Cir. 2001) (holding that an objection to summary judgment evidence need not take any particular form so long as it is made "seasonably, strenuously, and specifically").

Griffiths or, so far as the record reveals, could have been known to him through reasonable diligence.  See note 4, supra.  The court therefore suppresses the deposition transcript and will not consider it in deciding the defendants' summary judgment motion.[6]  See Fed. R. Civ. P. 32(d)(4); Bunch v. Bullard, 795 F.2d 384, 391 (5th Cir. 1986).

Griffiths similarly complains that the transcript of his examination under oath filed with the motion is inaccurate in that it fails to reflect "changes" submitted afterwards by his attorney at the time.[7]  Though, unlike depositions, examinations under oath are not subject to Rule 30, see Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co., 528 F.3d 508, 521 (7th Cir. 2008), the court believes that the same concerns that called for suppression of the transcript of Griffiths's deposition also call for the suppression of his examination under oath.  In light

---

[6]Because Griffiths has not identified any particular inaccuracies in the deposition transcript, it is unclear how its admission at this stage would prejudice him.  While some courts have denied motions to suppress depositions for alleged transcription errors absent a showing of prejudice, see, e.g., Cohen's Fashion Optical, Inc. v. Cohen, No. 94-297, 1996 WL 1493026, at *9 (W.D. Pa. Sept. 30, 1996), this court will nevertheless suppress the transcript here.

[7]Griffiths, like most insureds, agreed in the policy to submit to an examination under oath by the insurer in the event of a claim, and Lloyds invoked that provision in subjecting him to such an examination.  See generally Krigsman v. Progressive N. Ins. Co., 151 N.H. 643, 647-48 (2005).

of these concerns--and without expressing any view as to their legitimacy--the court will not consider the transcript of the examination in ruling on the summary judgment motion.  <u>See</u> <u>United Fire & Cas. Co. v. Historic Preservation Trust</u>, 265 F.3d 722, 727 (8th Cir. 2001) (noting court's discretion to exclude transcript of examination under oath from evidence).

Griffiths also objects to the defendants' submission of a newspaper article reporting on suspicious fires at a property he allegedly owned (not the property subject to the Lloyds policy, but one of the properties to which he allegedly forged the deed). Griffiths is correct:  newspaper articles are "hearsay, inadmissible at trial to establish the truth of the reported facts" and therefore inadmissible on summary judgment as well. <u>Horta v. Sullivan</u>, 4 F.3d 2, 8-9 (1st Cir. 1993).  The court will therefore disregard the newspaper article in ruling on the motion for summary judgment.[8]

---

[8]Griffiths objects, without explanation, that the affidavit from an employee of Lloyd's former underwriter which has also been submitted by the defendants is "neither true nor accurate." A party who disagrees with the substance of an affidavit submitted in support of a summary judgment motion must buttress that disagreement with something of evidentiary quality, usually contrary portions of the affiant's deposition testimony or a counter-affidavit from another witness.  <u>See</u>, <u>e.g.</u>, <u>Meuser v. Fed. Express Corp.</u>, 564 F.3d 507, 515 (1st Cir. 2009).  Because Griffiths has not done so, his objection to the underwriter's affidavit is without merit.

II.  **Background**

On August 5, 2007, Griffiths signed and dated a two-page application for homeowners insurance, which had been prepared by an insurance agent, seeking coverage for a two-family house in Groveton, New Hampshire.  The bottom of the application, just above where Griffiths signed it, states, "I have read the above application and attachments.  I declare that the information in them is true, complete and correct to the best of my knowledge and belief.  This information is being offered to the company as an inducement to issue the policy for which I am applying."

Among the information in the application were answers to a series of questions provided by checking a box for "yes" or "no." These questions included, "During the last five years, has any applicant been indicted for or convicted of any degree of the crime of fraud, bribery, arson or any other arson-related crime in connection with this or any other property?" (capitalization, parenthetical, and bracketed text omitted).  The box next to this question was checked "no."

Lloyds claims that Griffiths knew this answer was false when he provided it.  On June 16, 2005--less than one year before Griffiths signed the application--he was indicted by a grand jury in Merrimack County Superior Court on six felony counts of forgery, in violation of N.H. Rev. Stat. Ann. § 638:1.  Griffiths

had also been indicted by another Merrimack County grand jury on
two additional felony forgery charges on March 17, 2005.  Each
indictment alleged that Griffiths, acting with a purpose to
defraud, had executed a deed in August 2004 knowing that it
purported to bear the authorized signature of the grantor, but
did not.  As executed, each deed conveyed property from
Griffiths's father to Griffiths, either alone or together with
one other person.  After counsel was appointed to defend him on
the charges, Griffiths waived extradition from New York (where he
was living at the time) and arraignment, and entered pleas of not
guilty, securing release on bond.  In doing so, Griffiths
affirmed that he lived at the same address where the indictments
had been sent, that he had "read the indictments and discussed []
them with his attorney," that his attorney had advised him "as to
the nature of the crimes charged," and that he understood "the
substance of the charges" (parentheses omitted).

      Yet Griffiths argues that he "was never indicted on any
charge of fraud specifically, and did not know that [he] had been
indicted on any charge that may have been perceived as fraud at
the time [he] signed [the] application . . . .  [he] had no
knowledge or belief [he] had been charged with fraud."  He also
points out that the forgery charges were all eventually dismissed
by writ of <u>nolle prosequi</u>.  But that did not happen until

December 13, 2007, more than four months after Griffiths had
signed the application.

Based on the representations in the application, Lloyds
issued the insurance policy in dispute here.  An employee for the
company working as Lloyds's underwriter at the time has submitted
an affidavit stating that, based on his experience, "absolutely
under no condition[] would coverage have been bound . . . had the
underwriter known that the applicant was previously indicted for
or convicted of any degree of fraud within the last five years,"
(emphases omitted), regardless of any other factor.[9]

Near midnight on December 19, 2007, a fire broke out at the
insured premises, causing heavy damage.  Griffiths made a claim
for the fire loss under the policy, but Lloyds denied it, citing,
among other alleged misrepresentations in the application,
Griffiths's statement that he had not been indicted for or
convicted of fraud within the preceding five years.  Griffiths

_____

[9]This statement is in the underwriter's supplemental
affidavit, submitted with the defendants' reply memorandum.  In
the underwriter's original affidavit, submitted with the summary
judgment motion itself, he had stated in relevant part only that
Lloyds would not have bound coverage had the underwriter known
that Griffiths had been convicted of fraud within the past five
years.  The underwriter explains in his supplemental affidavit
that this was an inadvertent omission.  In light of this
explanation, any disparity between the underwriter's original and
supplemental affidavits creates no issue of fact for summary
judgment purposes.  See Hernandez-Loring v. Universidad
Metropolitana, 233 F.3d 49, 54 (1st Cir. 2000).

then commenced this action by filing a pro se complaint against Lloyds and Croton Stokes, seeking leave to proceed in forma pauperis.   Judge Muirhead, conducting an initial review of Griffith's complaint, <u>see</u> L.R. 4.3(d)(1)(B), construed it to allege a claim against the defendants for breaching the insurance policy they issued him.

## III. **<u>Analysis</u>**

In denying coverage to Griffiths, Lloyds relied on its policy's "Concealment or Fraud" clause, which provides that

> We do not provide coverage to an 'insured' who, whether before or after a loss, has:
>
> 1.   Intentionally concealed or misrepresented any material fact or circumstance;
>
> 2.   Engaged in fraudulent conduct; or
>
> 3.   Made false statements;
>
> relating to this insurance.

This provision is identical to that in New Hampshire's "Standard Fire Policy," N.H. Rev. Stat. Ann. § 407:22, which is mandated by state law, <u>id.</u> § 407:2.   The defendants argue that they owe no coverage to Griffiths because he intentionally misrepresented a

material fact, namely that he had not been indicted for fraud

within the five years preceding the application.[10]

"Misrepresentation, according to the law of insurance, is

the statement of something, as fact, which is untrue, and which

the [in]sured states knowing it to be untrue, and with the intent

to deceive . . . such fact being . . . material to the risk."

Clark v. Union Mut. Fire Ins. Co., 40 N.H. 333, 338 (1860); see

also Am. Credit-Indemnity Co. of N.Y. v. E.R. Apt Shoe Co., 74

F.2d 345, 347-48 (1st Cir. 1934) (applying New Hampshire law);

Amoskeag Trust Co. v. Prudential Ins. Co. of Am., 88 N.H. 154,

---

[10]The defendants also argue that Griffiths falsely stated
that (1) he had not suffered a loss at any location in the last
three years, when in fact there had been a fire during that time
at one of the properties conveyed to Griffiths by the allegedly
forged deeds, (2) he did not own any other residence, when in
fact he owned property in Kentucky, and (3) that the insured
premises were primarily heated by oil, when in fact the only
heating system there was inoperable.  Because the defendants are
entitled to summary judgment on the basis of Griffith's
misrepresentation as to his history of fraud charges alone, the
court need not reach these arguments.

Nevertheless, the court observes that the defendants have
not even submitted any direct evidence--let alone shown beyond
dispute that--(1) Griffiths understood that the fire at the other
property, which damaged only discarded tires, was a "loss" as
meant by the question on the application, (2) the Kentucky
property contained a residence, or (3) Griffiths knew that the
heating system at the insured premises was inoperable at the time
he signed the application (which was in the spring).  Indeed,
Griffiths flatly denied each of those points at his deposition,
and the defendants have offered only weak inferential proof (if
any) to counter those denials.  The defendants' pursuit of
summary judgment on these bases anyway, then, is fundamentally
inconsistent with Rule 56.  See Part I, supra.

160-61 (1936); Domocaris v. Metro. Life Ins. Co., 81 N.H. 177,
181 (1923), overruled on other grounds, Boucouvalas v. John
Hancock Mut. Life Ins. Co., 90 N.H. 175 (1939).  In moving for
summary judgment, the defendants argue that there is no factual
dispute that Griffiths's statement that he had not been indicted
for fraud was (A) material, (B) untrue, and (C) made with the
intent to deceive.  The court agrees.


**A.   Materiality**

     For an insurer to deny coverage based on the insured's
misrepresentation, "[i]t is enough that the information requested
has bearing upon the soundness of the risk."  Amoskeag Trust, 88
N.H. at 162.  While the materiality of an insured's
misrepresentation often presents a question to be resolved by the
trier of fact, it can be decided by the court as a matter of law
in the absence of "evidence to warrant any other conclusion."
Id. at 163; see also Patten v. Merchants' & Farmers' Mut. Fire
Ins. Co., 38 N.H. 338 (1859).  That is the case here.

     The underwriter states, in fact, that Lloyds would not have
issued the policy had it known that Griffiths was indicted for
the crime of fraud within the five years preceding the
application, regardless of any other circumstances.  Griffiths
does not dispute this evidence, or even argue that his alleged

15

misrepresentation was not material.  Accordingly, the evidence conclusively establishes the materiality of Griffiths's alleged misrepresentation that he had not been indicted or convicted of the crime of fraud within the past five years.  See Jackson v. Hartford Life & Annuity Ins. Co., 201 F. Supp. 2d 506, 511 (D. Md. 2002) (ruling that misrepresentation that insured had not been convicted of a felony, when in fact he was then on probation for one, was material as a matter of law because insurer's "presumptive policy was to deny coverage to persons on probation"); Simmons v. Conseco Life Ins. Co., 170 F. Supp. 2d 1215, 1224 (M.D. Fla. 2001) (ruling that the insurer clearly established the materiality of the applicant's misrepresentation that he had not been convicted of a felony based on "uncontroverted evidence from [the] underwriter" that coverage would otherwise have been denied).

## B.   The statement was untrue

There is no doubt that, when he signed the application, Griffiths had "been indicted for or convicted of any degree of the crime of fraud . . . in connection with . . . any other property" in the preceding five years.  In fact, he was under indictment on eight charges of forgery at that very moment for allegedly executing deeds to various properties that falsely

16

purported to bear his father's signature.  Griffiths nevertheless argues that he was not under indictment for "any degree of the crime of fraud" as that phrase appeared in the application, either literally or to the best of his knowledge and belief, but was under indictment for forgery.  No reasonable finder of fact could accept this argument.

In construing a question on an insurance application, courts apply the same rules they apply in construing insurance policies themselves.  See, e.g., Gonzalez v. John Hancock Mut. Life Ins. Co., 927 F.2d 659, 660 (1st Cir. 1991) (applying Puerto Rico law); Hingham Mut. Fire Ins. Co. v. Mercurio, 878 N.E.2d 946, 949-50 (Mass. App. Ct. 2008); 6 Couch, supra, § 81:42; see also Am. Credit-Indem., 74 F.2d at 348; Stratford Sch. Dist. v. Employers Reins. Co., No. 94-488, slip op. at 15-17 (D.N.H. May 3, 1996), available at http://www.nhd.uscourts.gov/oo/ (search for "Stratford").  In New Hampshire, courts "construe the language of an insurance policy as would a reasonable person in the position of the insured based on a more than casual reading of the policy as a whole," giving "the language its natural and ordinary meaning" unless it is "reasonably susceptible to more than one interpretation."  Miller v. Amica Mut. Ins. Co., 156 N.H. 117, 119-20 (2007); accord 6 Couch, supra, § 81:42 (explaining that the same principles govern the interpretation of

insurance applications).  Furthermore, unless the policy language is ambiguous, its meaning presents a question of law to be decided by the court.  Miller, 156 N.H. at 119.

There can be no question that the natural and ordinary meaning of the phrase "any degree of the crime of fraud," as it appeared on the insurance application, unambiguously includes the crime of forgery, at least as it had been charged against Griffiths.  Again, the indictments against him alleged that he had executed various deeds knowing that each falsely purported to bear the authorized signature of the grantor--and, specifically, that he had acted with a purpose to defraud in doing so--in violation of N.H. Rev. Stat. Ann. § 638:1, I.  That law, in relevant part, provides that "[a] person is guilty of forgery if, with a purpose to defraud anyone, or with knowledge that he is facilitating a fraud to be perpetrated by anyone, he . . . makes, completes, executes, issues, transfers, publishes or otherwise utters any writing so that it purports to be the act of another." N.H. Rev. Stat. Ann. § 638:1, I(b) (emphasis added).  Thus, there can be no felony forgery without the intent or knowledge that a fraud be carried out.  See also Grafton Bank v. Flanders, 4 N.H. 239 (1827).

Indeed, forgery is the first crime enumerated under Chapter 638 of the New Hampshire Revised Statutes Annotated--entitled

"Fraud"--and under its first subchapter--entitled "Forgery and Fraudulent Practices Generally."  This reflects the fact that "'forgeries are a species of fraud,'" Black's Law Dictionary 677 (8th ed. 2004) (quoting 37 C.J.S. Forgery § 2, at 66 (1997)), and that they serve as "a means of perpetrating widespread fraud," Model Penal Code § 224.1 n. 1, at 278 (1980).[11]

But the notion that forgery is a "crime of fraud" depends on more than neat legal taxonomies.  General purpose dictionaries define "fraud" as "deceit" or "trickery," specifically, "intentional perversion of truth in order to induce another to part with something of value or to surrender a legal right." Merriam-Webster's Collegiate Dictionary 498 (11th ed. 2007); see also, e.g., Random House College Dictionary 526 (rev. ed. 1980); American Heritage Dictionary of the English Language 523 (1973). These everyday definitions are in accord with those found in the law, which conceives of fraud as "knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment," Black's Law Dictionary 685, or,

---

[11]This article of the Model Penal Code, like the first subpart of Chapter 638 of the New Hampshire criminal code, is entitled "Forgery and Fraudulent Practices."  Notably, neither the Model Penal Code nor the New Hampshire criminal code defines any single offense known as "fraud" per se, but several different offenses--including forgery--grouped together under the heading "Fraud" or "Fraudulent Practices."

more broadly, "any artifice by which a person is deceived to his disadvantage," Wiley v. Wirbelauer, 174 A. 20, 23 (N.J. 1934).

These far-ranging definitions of "fraud" readily embrace forgery, particularly in the sense that Griffiths was charged with practicing it, i.e., by executing deeds that falsely purported to transfer properties to himself.  See Model Penal Code § 224.1 cmt. 1, at 283 (noting the need to criminalize forgery of "deeds and wills, which constitute links in the chain of devolution of title and are usually entered of public record as notice to all").  To a reasonable person in Griffiths's position, then, the meaning of the phrase "crime of fraud" on the application would have clearly covered the forgery offenses charged against him.

Griffiths also argues that, even if "crime of fraud" did include the forgery charges as a matter of objective interpretation of the insurance application, he harbored no subjective "knowledge or belief [he] had been charged with fraud."  Griffiths is right that he represented only that the statements in his application were "true, complete and correct to the best of [his] knowledge and belief."  But that qualifier does not operate to make every statement in the application true so long as Griffiths subjectively believed that it was.

The problem with Griffiths's argument, as a leading case points out, is that it essentially reads the term "knowledge" out of the application.  Skinner v. Aetna Life & Cas., 804 F.2d 148, 151 (D.C. Cir. 1986).  Yet that term is significant because, while what an applicant believes may well depend solely on his subjective understanding, "[w]hat an applicant knows can be determined, and the conclusions that knowledge compels can be assessed" objectively.  Id.  Thus, the use of the phrase "knowledge and belief" demands

> that knowledge not defy belief . . . .  What the applicant in fact believed to be true is the determining factor in judging the truth or falsity of his answer, but only so far as that belief is not clearly contradicted by the factual knowledge on which it is based.  In such an event, a court may properly find a statement false as a matter of law, however sincerely it may be believed.

Id.  Here, Griffiths's claimed belief that he had not been indicted for the crime of fraud is clearly contradicted by the undisputed evidence of his knowledge to the contrary.

Specifically, when Griffiths entered pleas of not guilty to the forgery charges, he affirmed that he had read the indictments and discussed them with his attorney, who advised him of the nature of the charges, and that he understood their substance. The indictments which Griffiths had read and discussed, of course, each explicitly charged that Griffiths acted with the

requisite "purpose to defraud."  And this all happened less than

one year before Griffiths signed the insurance application.

Given these circumstances--which, again, are undisputed--a

rational factfinder would have to conclude that Griffiths knew at

the time of the application that he had been indicted for crimes

of fraud, even if he now says he did not subjectively believe

that.[12]  See Simmons, 170 F. Supp. 2d at 1224 (ruling as a matter

of law that an applicant knew he had been convicted of felonies

where, less than two years prior, he had entered pleas of nolo

contendre to several felony charges); cf. Jackson, 201 F. Supp.

2d at 511 (calling it "sensible" not to argue that an applicant

_____

[12]Indeed, the doctrine of judicial estoppel would appear to
prevent Griffiths from arguing here that he did not understand
the nature of the forgery charges when he told the Superior Court
that he did understand them in order to enter his pleas.  Under
that doctrine, "[w]here a party assumes a certain position in a
legal proceeding, and succeeds in maintaining that position, it
may not thereafter, simply because its interests have changed,
assume a contrary position . . . .  The purpose of this doctrine
is to protect the integrity of the judicial process by
prohibiting parties from deliberately changing positions
according to the exigencies of the moment."  Kelleher v. Marvin
Lumber & Cedar Co., 152 N.H. 813, 848 (2005) (quotation marks and
bracketing by the court omitted).  While all the elements of
judicial estoppel appear to be present--Griffiths's positions are
clearly inconsistent, he succeeded in persuading the Superior
Court to accept that he understood the charges, and he would
derive an unfair advantage here if allowed to argue to the
contrary, see id.--the court need not apply the doctrine here
because the defendants have not invoked it.

"did not have knowledge of his own criminal . . . history," which included a forgery conviction for which he was on probation).

### C.   Intent to deceive

For largely the same reasons, the court also rules that any rational finder of fact would have to conclude that Griffiths made the false statement with the intent to deceive.  As already noted, see Part I, supra, "[f]raud must be proved by clear and convincing evidence, but such proof may be founded upon circumstantial evidence."  Caledonia, Inc. v. Trainor, 123 N.H. 116, 124 (1983).  To prevail on a defense of fraud, then, it is not necessary that "direct proof of intention to cause action by the falsehood must come from the lips of the speaker . . . .  [C]onclusive proof of the existence of such an intention [may be] found in the nature and circumstances of the lie itself."  Hall v. Merrimack Mut. Fire Ins. Co., 91 N.H. 6, 11 (1940).  Here, the nature and circumstances of Griffith's false statement on the insurance application conclusively show an intent to deceive.

First, as just discussed at length, the circumstances at the time Griffiths signed the application eliminate any conceivable possibility that he did not then understand he was under indictment for the crime of fraud.  While Griffiths makes much of the fact that the charges were eventually dismissed, that did not

happen until more than four months after he had submitted the application.  Moreover, the application asked whether Griffiths had been indicted for the crime of fraud within the past five years, not whether he had been convicted, so Griffiths would have been answering falsely even if the indictments had been dismissed by then.[13]  In light of this evidence, any reasonable factfinder would have to conclude that Griffiths's false statement was the product of an intent to deceive, rather than an honest mistake about the state of his criminal record.  Cf. Crews v. Shelter Gen. Ins. Co. 393 F. Supp. 2d 1170, 1176-77 (W.D. Okla. 2005) (finding a genuine issue as to whether the applicant acted deceptively in stating he had no felony conviction where he testified to being told at the time of the conviction--which was more than 20 years before the application--that it "would be erased from his criminal record if he stayed out of trouble" during his deferred sentence); Russell v. Royal Maccabees Life

---

[13]Griffiths says that he has filed a petition with the Superior Court to annul the records of the charges against him under N.H. Rev. Stat. Ann. § 651:5, II, pointing out that the result of that relief would be that he could not be required to disclose the indictments "[i]n any application for employment, license or other civil right or privilege," id. § 651:5, X(c). Assuming, dubitante, that this provision applies to an application for homeowners insurance, the fact remains that, at the time Griffiths submitted the application, the charges had not even been dismissed, let alone annulled (indeed, they still have not).  So § 651:5 had no bearing on Griffiths's duty to disclose the charges in the application.

Ins. Co., 974 P.2d 443, 450 (Ariz. Ct. App. 1998) (finding a genuine issue as to whether the applicant acted deceptively in stating he had no felony conviction where the conviction had been expunged and his lawyer had "advised him that he could respond to inquiries into his criminal background, such as whether he had ever been convicted of a felony, in the negative").

Second, in the absence of any such innocent explanation, there is simply no way to understand the false statement except as an effort by Griffiths to obtain a homeowners policy despite the pendency of forgery charges against him, that is, as intentional deception.  Indeed, the application requires an explanation for any "yes" answer, and specifically states that the information provided "is being offered to the company as an inducement to issue the policy."  Based on the application itself, then, Griffiths must have known (if he did not already) that answering "yes" to the question about his criminal history would have hurt his chances of getting the insurance, giving him a powerful motive to falsely answer "no."

As the New Hampshire Supreme Court has concluded from similar circumstances, "[n]o applicant so fully informed in such matters, in the absence of excusing circumstances here lacking, can be considered as acting innocently if he fails frankly to take the risk of rejection after disclosure of all the facts

asked for." <u>Amoskeaq Trust</u>, 88 N.H. at 160.  There, the court rejected the argument that the plaintiff, who had tested positively for the presence of certain substances in his urine less than two years before applying for life insurance yet stated to the contrary in his application, might have "innocently believed that the knowledge of the facts was of no importance to the [insurer] in determining whether or not it should write the risk applied for." <u>Id.</u> at 159.  The court ruled that, even if the applicant "consciously believed that the facts falsified did not affect the risk, then it must be supposed also that by concealing those facts he assumed to act secretly the part of the . . . advisors of the [insurance] company.  The innocence and good faith of such action are not discernible." <u>Id.</u> at 159-60. Thus, although a jury had found for the insured at trial, the New Hampshire Supreme Court ruled that the Superior Court should have entered a directed verdict for the insurer, because the applicant's "fraudulent intent conclusively appears upon the evidence" as a matter of law.  <u>Id.</u> at 160.

The undisputed facts of record here demand the same conclusion.  Again, at the time he submitted the application, Griffiths knew both that he was under indictment for the crime of fraud--because he had affirmed his understanding of the forgery charges against him less than one year beforehand--and that

26

disclosing the indictments would likely make procuring the insurance more difficult--because the application stated that the insurer would treat the information provided as an inducement to issue any policy.  As with the applicant in Amoskeag Trust, then, Griffiths's "fraudulent intent conclusively appears," necessitating judgment for the defendants as a matter of law.

The court appreciates that "[i]n cases where, as here, the state of mind of one of the parties is crucial to the outcome of the case, resort to summary judgment is vested with more than the usual difficulty."  Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 928 (1st Cir. 1983).  That difficulty is compounded where, as is also the case here, the party moving for summary judgment bears the burden of proving that state of mind, and of doing so by clear and convincing evidence.  Nevertheless, "the presence of issues involving state of mind, intent, or motivation does not automatically preclude summary judgment." Id. at 929.  Rather, just as with any other claim or defense, summary judgment must be granted to the party asserting fraud where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  This rule "would be rendered sterile . . . if the mere incantation of

intent or state of mind would operate as a talisman to defeat an otherwise valid motion" for summary judgment.  <u>Meiri v. Dacon</u>, 759 F.2d 989, 998 (2d Cir. 1985).

This court, in fact, recently granted summary judgment to a party seeking to void an agreement on the basis of a fraudulent misrepresentation, <u>see</u> <u>Transfer My Timeshare, LLC v. Selway</u>, 2009 DNH 153, 10-11, and other federal courts have granted summary judgment to insurers defending their denials of coverage based on the insured's knowingly false statements in their applications, <u>see</u> <u>Whitford Land Transfer Co. v. Seneca Ins. Co.</u>, No. 08-71, 2008 WL 4792386, at *7-*8 (E.D. Pa. Oct. 31, 2008) (discussing cases).  These decisions illustrate that "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation."  <u>Meuser</u>, 564 F.3d at 515 (quotation marks omitted).

Here, as just discussed at length, the evidence before the court shows that, at the time Griffiths submitted the application, he knew both that he was under indictment for the crime of fraud and that revealing that information would hurt his chances of getting insurance, leaving no doubt that he acted with the intent to deceive when he falsely answered that he had not

been indicted for the crime of fraud within the past five years.
Griffiths has not come forward with any evidence to the contrary.
Instead, he offers only unsworn and unexplained statements in his
briefs to the effect that he did not know he had been charged
with fraud or that "he in no way thought he was lying."  Those
are precisely the kinds of "conclusory allegations" that cannot
defeat summary judgment, even in a case like this, where intent
is at issue.  See, e.g., Meuser, 564 F.3d at 515; see also Gulf
Coast Bank & Trust Co. v. Reder, 355 F.3d 35, 39 (1st Cir. 2004)
(affirming summary judgment for party with the burden of proof
whose "evidentiary proffers covered the essential elements of its
case" and the non-moving party "produced no evidence to the
contrary," only "bare allegations" from pleadings and briefs).

IV.  **Conclusion**

For the foregoing reasons, the defendants' motion for
summary judgment is GRANTED.  Allowing the motion for summary
judgment moots all of the defendants' motions in limine and their
motion to bifurcate, as well as Griffiths's motions to extend the
deadline for his pretrial filings, to amend his complaint (which
seeks only to change the ad damnum clause to reflect the amount
of his alleged loss) and "to bring this matter and trial before

the magistrate judge."  Griffiths's motion to compel, which asks only for a copy of the mailing receipt for his deposition notice and "a listing of the Certain Underwriters and [] their capacity and percentage of liability on the insurance policy" is also denied as moot, because none of that information could change the outcome of summary judgment, cf. Fed. R. Civ. P. 56(f).


      **SO ORDERED.**

                                _____
                                Joseph N. Laplante
                                United States District Judge

Dated:  April 13, 2010

cc:  Joseph Griffiths, pro se
     Ralph Suozzo, Esq.
     Grace V.B. Garcia, Esq.